Victor BUENO et al., Appellants,

v.

LA COMPANIA PERUANA de RADIODIFUSION, S.A., Appellee.

No. 10676.

District of Columbia Court of Appeals.

Argued Jan. 4, 1977.

Decided March 31, 1977.

Rehearing En Banc Denied June 21, 1977.

---

Daniel R. Ferry and Edison W. Dick, Washington, D.C., with whom Harry A. Inman, Washington, D.C., was on the brief, for appellants.

Robert Osar, Ithaca, N.Y., of the bar of the State of New York, pro hac vice, by special leave of court, with whom Duncan H. Cameron, Washington, D.C., was on the brief, for appellee.

Before NEWMAN, Chief Judge, and KERN and YEAGLEY, Associate Judges.

NEWMAN, Chief Judge:

Appellants individually and as members of a District of Columbia partnership (hereafter C.B.B.), sued appellee for damages for breach of contract. On motion of appellee, the trial court dismissed for lack of *in personam* jurisdiction, based on its ruling that appellee, (hereafter C.P.R.), a Peruvian corporation, was not subject to service of process in this action pursuant to the D.C. Longarm Statute. D.C. Code 1973, § 13–423. C.B.B. challenges this ruling on appeal. We affirm.

C.B.B., acting primarily through Victor Bueno, sought to purchase from C.P.R. the rights to broadcast in the United States a closed-circuit television presentation of the South American championship soccer match to be played between Peru and Chile in Montevideo, Uruguay on August 5, 1973. By a series of telephone calls from Bueno in the District of Columbia to Dufour (an agent of C.P.R.), in Peru, a contract was negotiated and agreed upon. This contract contemplated the transmission would be by microwave from the stadium in Uruguay to an earth station in Argentina from which it would be beamed to a satellite in space. This was to be the responsibility of C.P.R. Upon the proper delivery of the signal to the satellite in space, the duty of C.P.R. was completed. C.B.B. was responsible for arranging to withdraw the signal from the satellite in space and for its ultimate transmittal from there to the District of Colum-

bia. All relevant terms of the contract were agreed upon during these telephone conversations. C.P.R. reduced the agreement to writing, executed it, and mailed it to C.B.B. in the District of Columbia on July 24. On August 1, having not received the executed contract via mail, C.B.B. called C.P.R. in Peru and arranged for an employee of C.P.R. to fly to the District of Columbia at C.B.B.'s expense to bring a duplicate original of the contract executed by C.P.R. C.P.R. agreed and dispatched one of its employees, Mr. Delgado, for that purpose. Mr. Delgado delivered that document to C.B.B. on August 4. The contract was executed by them, and payment of $7,000 made to C.P.R. through Mr. Delgado.

In reliance upon the contract, C.B.B. had rented the Washington Coliseum, the necessary equipment, and sold numerous tickets for the event. Diplomats from various South American countries were among the sell-out crowd for this equivalent of our Super Bowl. Unfortunately, things went amiss.

Because of some malfunction, apparently in South America, the signal failed to properly reach the Washington Coliseum. Sound was received but no picture, save for one brief interval of approximately one minute. The crowd forcefully expressed its displeasure with resultant damage to persons and property. C.P.R. promptly refunded to C.B.B. the $7,000 paid as contract consideration and this action followed.

"Service" of the summons and complaint was made by C.B.B. upon C.P.R. by certified mail return receipt requested to its office in Lima, Peru. Said mailing was received by C.P.R. in Lima and a receipt therefor executed and returned to C.B.B. It is this service which was ruled invalid by the trial court. Appellants contend service of process was proper under the "transact-

ing business", the "contracting to supply services", or the "tortious injury" provisions of the D.C. Long-arm Statute.[1]

■ Extensive discovery was completed prior to the trial court's hearing the motion to dismiss. The evidence before the trial court indicated the following: (1) C.P.R., a Peruvian corporation, is not authorized to do business in the District of Columbia pursuant to D.C. Code 1973, § 29–933; (2) it maintained no office in the District of Columbia; (3) it never previously engaged in any transmission of a TV signal to a satellite for re-transmission to the United States; (4) it never solicited business in the District of Columbia (unless this occasion constituted "soliciting" business); (5) it never paid taxes in the District of Columbia; and (6) it has previously never been either a plaintiff or defendant in any litigation in the District of Columbia. Indeed the evidence is undisputed that the events giving rise to this litigation constitute the only contact C.P.R. had ever had with this jurisdiction.[2] Thus, the circumstance leading to this litigation must provide those minimal contacts consistent with due process which are required for jurisdiction. *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.,* D.C.App., 355 A.2d 808 (1976).[3]

■ For an entity to be transacting business within this jurisdiction some purposeful, affirmative activity within the District of Columbia is required. *Cf. Kolbe, Inc. v. Chromodern Chair Co.,* 211 Va. 736, 180 S.E.2d 664 (1971); *Unidex Systems Corp. v. Butz Engineering Corp.,* 406

1. D.C. Code 1973, § 13–423(a)(1), (2), and (3)–(4), respectively. Appellants' principal reliance appears to be on § 13–423(a)(1), "transacting any business in the District of Columbia".

2. The record discloses that other than in purchasing various supplies, equipment and films in California, Utah, New Jersey, Florida and

New York, C.P.R. had virtually no prior contact with the United States.

3. *Environmental Research* held that our long-arm statute permits exercise of personal jurisdiction over non-resident defendants to the extent permitted by constitutional due process.

F.Supp. 899 (D.D.C.1976). The claim must arise of such activity. D.C. Code 1973, § 13–423(b). Measured by this standard, the facts show an absence of transacting business within this jurisdiction by C.P.R. C.P.R. did not initiate or pursue contract negotiations in the District of Columbia. All such was done by C.B.B. No services were to be provided by C.P.R. in the District of Columbia and all its duties under the contract were to be performed either in South America or, with respect to the satellite, in outer space. The sole contact which C.P.R. had within this jurisdiction was the delivery, by courier, from Peru to the District of Columbia, at the request and expense of C.B.B., of a duplicate original contract executed by C.P.R. in Peru. While we recognize that, under certain circumstances, a single act may be sufficient to constitute "transacting business" within the meaning of long-arm statutes,[4] we agree with the ruling of the trial court that this act of delivery made at the request of appellant, even when coupled with the subsequent conduct of the courier in accepting payment and later returning it, is insufficient to subject C.P.R. to *in personam* jurisdiction in the District of Columbia under D.C. Code 1973, § 13–423(a)(1).[5]

*Affirmed.*

---

4. *United States Liability Insurance Co. v. Handy,* D.C.Mun.App., 173 A.2d 208 (1961); *Central Insurance Agency Co. v. Financial Credit Corp.,* 222 F.Supp. 627 (D.D.C.1963); *Bennett v. Computers Intercontinental, Inc.,* 372 F.Supp. 1082 (D.Md.1974).

5. We have considered appellant's arguments based on "providing services", [§ 13–423(a)(2)], and "tortious conduct", [§ 13–423(a)(3)–(4)], and find them equally unpersuasive.