**Richard REIMAN, etc., Plaintiff,**

v.

**FIRST UNION REAL ESTATE EQUITY AND MORTGAGE INVESTMENTS, etc., Defendant.**

**Civ. A. No. 84–2574.**

United States District Court,
District of Columbia.

July 17, 1985.

David S. Greene, Rockville, Md., for plaintiff.

Stephen D. Walters, Cleveland, Ohio, for defendant.

### MEMORANDUM AND ORDER

JACKSON, District Judge.

This matter is before the Court on defendant's motion to quash service of pro-

cess and to dismiss the complaint against it in this diversity case for breach of contract on the ground that the Court lacks personal jurisdiction over it. In the alternative, defendant moves that the case be dismissed under the doctrine of *forum non conveniens,* because its home state of Ohio is a more appropriate forum for the case to be heard. Both sides having presented affidavits and other materials outside the pleadings, the Court must treat the motion as one for summary judgment of dismissal pursuant to Fed.R.Civ.P. 12(b). For the reasons set forth below, the motion will be denied.

Plaintiff is a District of Columbia real estate broker who sues defendant First Union Real Estate Equity and Mortgage Investments ("First Union"), an Ohio business trust, for a commission to which he claims he is entitled. The suit arises out of an alleged contract between plaintiff and defendant by which, according to plaintiff, he would receive a two percent cash commission at closing if he were able to secure a buyer for certain Tennessee real property owned by defendant (the "Two Rivers" property). Plaintiff asserts that he did, in fact, secure two ready, willing and able buyers for the property, but that defendant refused to consummate a sale with either.

Defendant contends that this Court is without personal jurisdiction over it because First Union did not "transact business" in the District of Columbia within the meaning of the applicable portion of the D.C. long-arm statute, D.C.Code § 13–423(a)(1),[1] and that service of process upon it in Ohio must, therefore, be quashed. D.C.Code § 13–424. First Union represents that it is an Ohio business trust with its only place of business in Ohio, and that it has never owned property in D.C., nor derived any revenue from the District. De-

fendant further maintains that it did not initiate contact with plaintiff with respect to the Two Rivers property, nor did any of its employees or agents ever visit the District in connection with that transaction or any other.

Ordinarily an inquiry into the basis for a court's exercise of personal jurisdiction over a non-resident defendant begins with consideration of whether service of process is authorized by statute; if so, it proceeds to whether the defendant has the requisite "minimum contacts" with the forum to satisfy the Due Process Clause. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The District of Columbia Court of Appeals having held that the D.C. long-arm statute permits the exercise of personal jurisdiction by a District of Columbia court to the fullest extent permitted to it under the Due Process Clause, the first question has been eliminated. *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.,* 355 A.2d 808, 810–11 (D.C. 1976) (*en banc* ); *Mouzavires v. Baxter,* 434 A.2d 988, 990–92 (D.C.1981) (*en banc* ) (*per curiam* ), *cert. denied,* 455 U.S. 1006, 102 S.Ct. 1643, 71 L.Ed.2d 875 (1982); *Textile Museum v. F. Eberstadt & Co., Inc.,* 440 F.Supp. 30, 31 (D.D.C.1977). The sole issue before the Court, therefore, is whether defendant had sufficient nexus with the District in connection with the Two Rivers transaction such that this Court's exercise of *in personam* jurisdiction over it will not offend "traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)).

A nonresident defendant may be considered to have transacted business within the meaning of § 13–423(a)(1) with-

---

**1.** The relevant portion of the statute reads as follows:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

(1) transacting any business in the District of Columbia.

There is no dispute that this is the only section of the long-arm statute which could possibly confer personal jurisdiction over defendant. It should be noted, however, that it applies only as to claims arising out of the business transacted in the District. D.C.Code § 13–423(b).

out ever having been physically present in the District, and, under certain circumstances, even a single act may be sufficient to bring a defendant within the purview of the statute. *See, e.g., Dorothy K. Winston & Co. v. Town Heights Development, Inc.,* 376 F.Supp. 1214, 1216 (D.D.C.1974); *Bueno v. La Compania Peruana de Radio-Difusion, S.A.,* 375 A.2d 6, 9 (D.C.1977).[2] A plaintiff may not, however, depend upon his own activity to establish the existence of minimum contacts; the defendant must in some way have voluntarily and purposefully availed himself of the protection of the forum state's laws. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). More specifically:

> The mere fact that a nonresident has retained the professional services of a District of Columbia firm, thereby setting into motion the resident party's own activities within this jurisdiction, does not constitute an invocation by the nonresident of the benefits and protections of the District's laws.

*Environmental Research International,* 355 A.2d at 812.

In *Environmental Research,* appellant, a D.C. consulting firm, contacted appellee Lockwood Greene, a Massachusetts corporation, to offer its services in connection with the preparation of a construction grant application to be submitted to the Environmental Protection Agency. An agreement was reached, and Environmental Research performed various services in partial fulfillment of its obligations. Thereafter it sued Lockwood and another company, incorporated in Pennsylvania, in a District of Columbia court for compensation for its services. The trial court dismissed the case for lack of personal jurisdiction, and the Court of Appeals affirmed, stating:

> It is undisputed that appellant initiated the relationship between it and appellees ... by visiting Lockwood Greene in South Carolina. No negotiations were conducted in the District of Columbia. Penn Dye's [the Pennsylvania corporation's] contacts with appellant were limited to a few letters and telephone calls, as well as some discussions with appellant concerning the progress of the waste treatment project. Except for two visits to the District ... to meet with EPA officials, no personnel of the appellees were physically present within the jurisdiction.

*Id.*[3]

A few years later, however, in *Mouzavires v. Baxter, supra,* a divided court in a similar case found a basis to exercise personal jurisdiction over a nonresident defendant who initiated the formation of a contractual relationship with a resident plaintiff. Mouzavires, a District of Columbia attorney, was contacted by a Florida attorney who sought Mouzavires' assistance in connection with a suit pending in federal court in Florida. An agreement was made, and Mouzavires accordingly performed various services in the District and in Virginia. Following a dispute over compensation, Mouzavires filed suit in D.C. Superior Court for fees owed, but the trial

---

**2.** *See also McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), in which the Supreme Court upheld a California state court's exercise of personal jurisdiction over a Texas insurance company whose only contacts with California were a reinsurance certificate mailed to plaintiff in California and the acceptance of premiums mailed by plaintiff from that state. The court held that it was "sufficient for purposes of due process that the suit was based on a contract which had substantial connection" with the forum state. *Id.* at 223, 78 S.Ct. at 201.

**3.** The Court of Appeals agreed with the trial court that Environmental Research was an independent contractor, not an agent, so that appellees could not properly be said to have transacted business in the District "by an agent" within the meaning of § 13–423(a)(1). *Id.* at 812, n. 7. *Compare Rose v. Silver,* 394 A.2d 1368 (D.C. 1978). Nor could visits by appellees' employees to the city for purposes of consulting with EPA officials be considered, because the "government contacts" doctrine precludes using entry into the District for the purpose of contacting federal agencies as a basis for the assertion of personal jurisdiction. *Id.* at 813–14. *See Mueller Brass Co. v. Alexander Milburn Co.,* 152 F.2d 142 (D.C.Cir.1945).

court granted a motion to quash service of process on the ground that it could not exercise personal jurisdiction over the Florida firm and its partners. Relying in part upon *McGee v. International Life Insurance Co.* and *Hanson v. Denckla, supra,* the D.C. Court of Appeals reversed. In *McGee,* said the court, "a unanimous Court ruled that it was 'sufficient for purposes of due process that the suit was based on a contract which had substantial connection with [the forum state].'" *Mouzavires,* 434 A.2d at 993 (quoting *McGee,* 355 U.S. at 223, 78 S.Ct. at 201). The Court continued:

> Both *Hanson* and *McGee* reaffirmed the ... principle that notions of fundamental fairness require that the defendant's contacts with the forum be evaluated qualitatively rather than quantitatively.... These considerations assume greater significance when the defendant's contacts with the forum arise out of a contractual arrangement with a forum plaintiff. Modern systems of communication have revolutionized commercial transactions to such an extent that parties may negotiate by telephone certain contractual arrangements which only a generation ago would have necessitated the physical presence of both parties in the same forum.... Clearly, the most critical inquiry is not whether the nonresident defendant is physically present in the forum but whether the defendant's contacts with the forum are of such a quality and nature that they manifest a deliberate and voluntary association with the forum.

*Id.* at 995. Thus, where a non-resident had solicited the business relationship, and the contract called for the performance of work within the District of Columbia, the court found that the transaction had such a substantial connection with the District that the exercise of personal jurisdiction was permissible.[4]

Most recently, in *Burger King Corp. v. Rudzewicz,* —— U.S. ——, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the Supreme Court considered whether a federal court in Florida could exercise personal jurisdiction over a Michigan resident alleged to have breached a franchise agreement with Burger King, a Florida corporation. Noting that the Due Process Clause mandates only that individuals have "fair warning" that they may be subject to the jurisdiction of a foreign court—a requirement which may be satisfied by a defendant's having "purposefully directed" his or her activities toward residents of the forum state—the court said with respect to interstate contractual arrangements that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other state for the consequences of their activities." *Id.* at 2182 (quoting *Travelers Health Assn v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950)). The court further observed that while a defendant's contract with a forum resident *alone* may not automatically establish minimum contacts sufficient for the exercise of personal jurisdiction, such factors as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" will ordinarily be relevant to such a determination. *Id.* 105 S.Ct. at 2185–86.

■ What the foregoing case law makes clear for purposes of the instant case, therefore, is that there are a number of unresolved factual issues relevant to defendant's motion, including: (1) whether defendant in some way "purposefully directed" its activities at a District resident, or, more specifically, whether it solicited the relationship with plaintiff; and (2) whether there was a contract between them concerning the sale of the Two Rivers

---

4. *See also Morton v. Environmental Land Systems Ltd.,* 55 Ill.App.3d 369, 13 Ill.Dec. 79, 370 N.E.2d 1106 (1977) (solicitation of a contract constitutes the transaction of business within the meaning of the statute); *compare Bueno v.*

*LaCompania Peruana, supra* (no transaction of business occurred where defendant did not initiate or pursue contract negotiations, nor were services to be performed in the District of Columbia).

property, and, if so, what were its terms and the parties' actual course of dealings.

As to these key points there are clearly genuine issues of material fact which preclude judgment.[5] Plaintiff has submitted an affidavit in which he avers that he entered into an oral agreement with Mark R. Munsell, defendant's representative, to act as a broker on defendant's behalf, with an expected commission of two percent cash at closing. Defendant contends that no such agreement was ever made. At this juncture the facts must be viewed in the light most favorable to plaintiff. *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (*per curiam*); *Norris v. District of Columbia*, 737 F.2d 1148, 1150 (D.C.Cir.1984).

Plaintiff and defendant are also in substantial disagreement as to who solicited whom, and as to which portion of their business dealings may be relevant for the purpose of resolving the issue. Defendant contends that plaintiff's initial contact with First Union was entirely unsolicited and that its later communications with plaintiff occurred solely at plaintiff's behest.[6] Plaintiff, on the other hand, concedes that his first contact with First Union with respect to an earlier transaction involving San Francisco property was unsolicited, but argues that the Court should concern itself only with the Tennessee transaction, and, as to the latter, he avers, the letter he received, dated April 25, 1983, concerning defendant's desire to sell the Two Rivers property was entirely unsolicited by him.[7]

■ With respect to defendant's alternative argument that the complaint should be dismissed on *forum non conveniens* grounds, the Court has considered both the interests of the parties and of the public, and has concluded that this is an appropriate forum for the resolution of plaintiff's claims. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Carr v. Bio-Medical Applications of Washington, Inc.*, 366 A.2d 1089 (D.C. 1976). Plaintiff is a resident of the District of Columbia whose choice of forum for whatever reason should not ordinarily be disturbed, *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843, and it appears that there are potential witnesses and relevant documents located in the D.C. metropolitan area. Although there may be some inconvenience involved if defendant is required to defend a suit in the District, it is not of such magnitude as to justify dismissal of this action on *forum non conveniens* grounds for its convenience alone, nor does it appear that the suit is so unconnected with the District as to warrant its dismissal in the public interest.

ORDERED, that defendant's motion to dismiss is denied.

---

**5.** There is also a contested issue of fact as to whether plaintiff was acting as an independent contractor or as defendant's agent within the meaning of D.C.Code § 13–423(a). Plaintiff contends that he was the latter, but even construing the facts most favorably to him, the burden of proving an agency relationship is his, *H.G. Smithy Co. v. Washington Medical Center*, 374 A.2d 891, 893 (D.C.1977), and the Court cannot find on the record presently before it that one existed. *See Rose v. Silver, supra.*

**6.** Specifically, defendant asserts that plaintiff first contacted Mr. Munsell by phone in February, 1983, with respect to the possible purchase of property owned by First Union in San Fran-

cisco. Munsell avers in an affidavit attached to defendant's motion that although no agreement was ever reached as to the San Francisco property, plaintiff asked to be advised of any other property which defendant sought to sell. Soon thereafter, Munsell informed plaintiff of First Union's desire to sell the Two Rivers property, and there followed a number of telephone and mail contacts between the two with respect to it, as well as a meeting at First Union's Cleveland office in July, 1983.

**7.** Plaintiff offers no explanation, however, for the fact that the letter states that it was sent at plaintiff's request.