**COMSAT CORPORATION, Plaintiff,**

v.

**FINSHIPYARDS S.A.M.,
et al., Defendants.**

**Civ. No. 94–0165 PLF.**

United States District Court,
District of Columbia.

Sept. 15, 1995.

**518**

Andrew N. Vollmer, Marc R. Cohen, Washington, DC, for plaintiff.

Jack P. Janetatos, Stuart M. Weitz, Washington, DC, for defendants.

## OPINION

PAUL L. FRIEDMAN, District Judge.

COMSAT Corporation is an American telecommunications provider that carried long distance telephone calls placed from the Republic of Zaire by Mobutu Sese Seko Kuku Ngbendu Wa Za Banga, the President of Zaire, and by others in Zaire to various places around the world. It sued President Mobutu in his personal capacity and the Republic of Zaire because, COMSAT contends, they have not paid their phone bills. COMSAT also names Finshipyards S.A.M. as a defendant because Finshipyards was responsible for receiving and forwarding COMSAT's invoices to the Zaire defendants and for remitting payment to COMSAT. Finshipyards, a company formed in Monaco and maintaining its principal place of business there, has moved to dismiss this action as to itself on the grounds that the Court lacks personal jurisdiction over it. The Court finds that it does not have jurisdiction over Finshipyards and that COMSAT therefore must seek relief against Finshipyards in another forum.

## I. BACKGROUND

COMSAT Corporation is a private entity, incorporated and, at the time of the events underlying this dispute, maintaining its principal place of business in the District of Columbia. It was created under federal law to, among other things, operate a commercial communications satellite system. 47 U.S.C. §§ 731, 735. COMSAT is the United States' sole representative to the International Maritime Satellite Organization ("Inmarsat").

Inmarsat is an international organization established pursuant to the Inmarsat Convention, opened for signature, September 3, 1976, 31 U.S.T. 1. Inmarsat owns, leases and operates telecommunications satellites that permit users to communicate with other persons anywhere in the world. Satellite capacity is made available through private entities such as COMSAT and national telecommunications administrations that own or operate land earth stations ("LESs") capable of sending and receiving signals to and from Inmarsat satellites and connected to terrestrial telecommunications systems. COMSAT is the sole United States' entity authorized by federal law to participate in Inmarsat, for the purpose of providing satellite telecommunications services to users. 47 U.S.C. § 752(a)(1). It owns three LESs located in Connecticut, California and Turkey and charges users for telecommunications services at rates filed with the Federal Communications Commission.

Potential users of the Inmarsat system must commission a mobile earth station ("MES") or terminal which can transmit and receive telecommunications signals directly to and from the Inmarsat satellite.[1] Commissioning such a terminal requires the completion of a Commissioning Application and the appointment of an Accounting Authority. By signing the Application, the applicant agrees to the obligation to pay without delay the charges set by the LES operator for the services provided. The Accounting Authority must be licensed by a member state of the International Telecommunications Union

---

1. Users of the Inmarsat system initiate calls at their terminal. These calls are transmitted directly to the Inmarsat satellite from which they are retransmitted to a LES. The particular LES that receives the signal is determined either by the user, who may designate a particular LES, or by the orientation of the terminal's antenna because of a previously designated LES. After reaching the LES, the telephone signal is then retransmitted to terrestrial telephone lines.

("ITU"), a United Nations agency. It is expected to receive and pay bills issued by the LES operators and collect payment for the telecommunications services from the terminal owner-operators.

Zaire has commissioned Inmarsat terminals since approximately 1986. In 1988 Finshipyards, which is licensed by Monaco to act as an accounting authority, was appointed to act as Accounting Authority in connection with the Zaire terminals. Under the agreement between Zaire and Finshipyards, in return for its services as Accounting Authority Finshipyards was to receive a commission from Zaire on the amounts paid to Inmarsat LES operators.

The Zaire terminals received telecommunications services from COMSAT LESs in Connecticut, California and Turkey for calls made to Washington, D.C., other parts of the United States and other parts of the world from approximately March 1989 through June 1993. COMSAT sent invoices from its offices in Washington, D.C., to Finshipyards in Monaco for the telephone calls placed from the Zaire terminals and instructed Finshipyards to pay by check to COMSAT in Charlotte, North Carolina, or by transferring funds to a COMSAT bank account in New York City. The invoices also directed that billing inquiries were to be addressed to COMSAT's Washington offices. Finshipyards always made payment by transferring funds to the COMSAT bank account in New York. It paid every COMSAT invoice for service to Zaire terminals from March 1989 to November 1991.

Between January 1990 and May 1993, COMSAT personnel in Washington, D.C., communicated with Finshipyards to complain about late payment or non-payment of Zaire terminals' invoices. Finshipyards responded to these communications and, plaintiff alleges, made representations regarding its intention to pay these invoices. In response to its own difficulty in collecting payment from Zaire, sometime in 1992 Finshipyards sent out a document to the LES operators from whom it had received invoices, including COMSAT in Washington, D.C., indicating that they should bar all calls originating from the Zaire terminals. In November 1992, COMSAT suspended service to certain Zaire terminals and met with Zaire's Ambassador to the United States to demand payment.

COMSAT has brought this action, claiming that Finshipyards was a principal participant in the telecommunication transactions for which COMSAT has not yet received payment and that Finshipyards owes COMSAT for those telecommunications services despite the fact that Finshipyards may not yet have collected payment from the Zaire terminals. COMSAT alleges breach of implied contract by Finshipyards, seeks payment of account stated, and claims that Finshipyards violated the Communications Act, 47 U.S.C. § 203(a).[2] Finshipyards has moved to dismiss COMSAT's complaint for lack of personal jurisdiction, insufficiency of process, insufficiency of service of process, and for failure to state a claim under the Communications Act. The Court heard oral argument on Finshipyards' motion. For the reasons stated below, the Court finds that it lacks jurisdiction over defendant Finshipyards and dismisses this action.

## II. DISCUSSION

■ A federal court may exercise personal jurisdiction over a non-resident defendant only when service of process is authorized by statute and only when consistent with due process of law. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Founding Church of Scientology of Washington, D.C. v. Verlag,* 536 F.2d 429, 432 (D.C.Cir.1976). In this federal question case, the Court first must look to the District of Columbia long-arm

**2.** COMSAT has also brought claims against the Republic of Zaire and President Mobutu of Zaire, who is sued solely in his personal capacity, alleging breach of implied contract, unjust enrichment, third party beneficiary and violation of the Communications Act. These parties have not appeared in this action. COMSAT has moved for a default judgment against Zaire and intends to

do the same with respect to President Mobutu. Having concluded that COMSAT has satisfied all the requirements of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.*, and Rule 55(e), Fed.R.Civ.P., on September 13, 1995, this Court entered a Final Judgment for COMSAT against Zaire in the amount of $2,584,895.34.

statute to determine whether it has personal jurisdiction. *Edmond v. United States Postal Service General Counsel,* 949 F.2d 415, 424 (D.C.Cir.1991). If that analysis demonstrates that the defendant would not be subject to the jurisdiction of the District of Columbia courts, the Court may look to Rule 4(k), Fed.R.Civ.P., which may permit a more expansive jurisdictional analysis.

### A. District of Columbia Long–Arm Statute

■ Under the District of Columbia long-arm statute, a plaintiff has the burden of establishing that personal jurisdiction exists by demonstrating a factual basis for the exercise of such jurisdiction over the defendant. *Edmond v. United States Postal Service General Counsel,* 949 F.2d at 424; *Crane v. New York Zoological Soc.,* 894 F.2d 454, 456 (D.C.Cir.1990); *Dooley v. United Technologies Corp.,* 786 F.Supp. 65, 70 (D.D.C.1992). While the long-arm statute is interpreted broadly and factual disputes are resolved in favor of the plaintiff, the plaintiff must allege some specific facts evidencing purposeful activity by the defendant in the District of Columbia by which it invoked the benefits and protections of the District's laws. *Edmond v. United States Postal Service General Counsel,* 949 F.2d at 428; *First Chicago Int'l v. United Exchange Co. Ltd.,* 836 F.2d 1375, 1378–79 (D.C.Cir.1988); *Mitchell Energy Corp. v. Mary Helen Coal Co. Inc.,* 524 F.Supp. 558, 563 (D.D.C.1981); *Meyers v. Smith,* 460 F.Supp. 621, 622 (D.D.C.1978).

■ In this case, plaintiff relies on both the "transacting business" and "contracting to supply services" provisions of the District of Columbia long-arm statute, D.C.Code §§ 13–423(a)(1) and (2).[3] Because a court in the District may exercise jurisdiction over a non-resident defendant "only [for] a claim for relief arising from the specific acts enumerated in [the statute] ....," D.C.Code § 13–423(b), plaintiff's jurisdictional allegations must arise from the same conduct of which the plaintiff complains. *Willis v. Willis,* 655 F.2d 1333, 1336 (D.C.Cir.1981); *Dooley v. United Technologies Corp.,* 786 F.Supp. at 71; *LaBrier v. A.H. Robins Co., Inc.,* 551 F.Supp. 53 (D.D.C.1982).

### 1. Transacting Business

■ The "transacting business" provision of the District of Columbia long-arm statute permits the exercise of personal jurisdiction to the full extent permitted by the Due Process Clause of the Constitution. *First Chicago Int'l v. United Exchange Co. Ltd.,* 836 F.2d at 1377; *Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.,* 355 A.2d 808, 810–811 (D.C.1976) (en banc). The constitutional touchstone of the due process determination is "whether the defendant purposefully established minimum contacts in the forum state." *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 108–09, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987) (internal citations and emphasis omitted).

The Supreme Court recognized in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), that in today's commercial world, business is often transacted solely by mail and wire communications across state lines and that jurisdiction may sometimes exist even if a defendant "did not *physically* enter the forum state." *Id.* at 476, 105 S.Ct. at 2184. The Court explained that in such cases it is necessary to determine whether the commercial actor that is the subject of the lawsuit purposefully availed itself of the privilege of conducting business in the forum state and whether the defendant's conduct in connection with that state is such that it "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The minimum contacts analysis embodies the basic notion that the defendant's

---

**3.** The District of Columbia long-arm statute provides in pertinent part:

A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's

(1) transacting any business in the District of Columbia;

(2) contracting to supply services in the District of Columbia; ...

D.C.Code § 13–423(a).

own action must be such as to put it on notice of the possibility of defending itself in the forum state. *Id.* at 298, 100 S.Ct. at 567–68; *Chung v. NANA Development Corp.*, 783 F.2d 1124, 1127 (4th Cir.), *cert. denied*, 479 U.S. 948, 107 S.Ct. 431, 93 L.Ed.2d 381 (1986); *Bueno v. La Compania Peruana de Radiodifusion, S.A.*, 375 A.2d 6, 8–9 (D.C. 1977). The Constitution does not permit a defendant to be haled into court in a jurisdiction "solely as a result of 'random,' 'fortuitous,' or other 'attenuated' contacts . . . or of the 'unilateral activity of another party or third person'. . . ." *Burger King Corp. v. Rudzewicz*, 471 U.S. at 475, 105 S.Ct. at 2183 (citations omitted).

■ To establish personal jurisdiction under the "transacting business" clause of the long-arm statute, D.C.Code § 13–423(a)(1), a plaintiff must demonstrate that (1) the defendant transacted business in the District; (2) the claim arose from the business transacted in the District (so-called specific jurisdiction); (3) the defendant had minimum contacts with the District; and (4) the Court's exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." *Dooley v. United Technologies*, 786 F.Supp. at 71. In a case such as this one, the long-arm statute analysis is subsumed by the due process analysis expressed in the third and fourth prongs. *Fisher v. Bander*, 519 A.2d 162, 163 (D.C.1986).

■ Plaintiff has not suggested that Finshipyards or any agent of Finshipyards is resident in the District of Columbia or has ever entered the District for the purpose of transacting business with COMSAT related to the Zaire terminals transactions. Plaintiff relies on Finshipyards' alleged awareness that COMSAT was located in the District of Columbia when it accepted appointment as Zaire's Accounting Authority, Finshipyards' entitlement to commissions for processing the Zairean account, COMSAT's services related to the Zairean account, telephone and fax communications between COMSAT and Finshipyards regarding unpaid invoices, and Finshipyards' agreements that it would pay certain amounts due.

The first factor on which plaintiff relies is Finshipyards' awareness that COMSAT was located in the District of Columbia when it accepted appointment as Zaire's Accounting Authority. Plaintiff argues that COMSAT is one of only six major LES operators and that Finshipyards knew, before it began operating as Accounting Authority for Zaire, that it would have regular, continuous and extensive contacts with the major LES operators, including COMSAT. Plaintiff relies on *Burger King Corp. v. Rudzewicz* where the Supreme Court explained that "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. at 473, 105 S.Ct. at 2182 (internal citations omitted).

In *Burger King,* the relationship between the plaintiff and Burger King was based on a written contract which contemplated "a carefully structured 20–year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida," and the franchisee voluntarily accepted "the long-term and exacting regulation of his business from Burger King's Miami headquarters." *Burger King Corp. v. Rudzewicz*, 471 U.S. at 480, 105 S.Ct. at 2186. As a result, the Supreme Court concluded that Rudzewicz purposefully availed himself of the privilege of conducting activities in Florida and "the 'quality and nature' of his relationship to the company in Florida could in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated'." *Id.* at 475, 480, 105 S.Ct. at 2183, 2186.

■ The contact between Finshipyards and the District of Columbia, while occurring regularly over a period of time, is a far cry from that between Mr. Rudzewicz and Florida. The particular LES that receives the signal from the Inmarsat satellite system is determined either by the user, who may designate a particular LES, or by the orientation of the terminal's antenna because of a previously designated LES. Complaint at ¶ 24. Plaintiff concedes in its complaint that "[t]he *Zaire Users specified COMSAT LESs* for each call that is the subject of this Complaint." Complaint ¶ 32(a) (emphasis added). Finshipyards had nothing to do with that

choice. While it is likely that Finshipyards was aware that Zaire's telephone calls could be transmitted to COMSAT LESs, the mere "foreseeability of an injury in a distant forum is not the touchstone of minimum contacts." *Chung v. NANA Development Corp.*, 783 F.2d at 1128. It was the unilateral decision by the Zaire users, without any effort or encouragement by Finshipyards, that led to the telecommunications signals being directed toward COMSAT. *Cf. Chery v. Bowman*, 901 F.2d 1053, 1058 (11th Cir.1990). Such unilateral activity by persons other than the defendant are insufficient to provide jurisdiction. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 298, 100 S.Ct. at 567– 68; *Falkirk Mining Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 375–76 (8th Cir. 1990).

The law firm billing cases cited by plaintiff are inapposite. In those cases the non-resident defendant either specifically sought out legal services from a District of Columbia law firm and visited and communicated with the law firm in the District in order to establish the relationship or sent an attorney into the District in order to obtain legal services there. *See Koteen v. Bermuda Cablevision, Ltd.*, 913 F.2d 973 (D.C.Cir.1990); *Fisher v. Bander*, 519 A.2d 162, 164–65 (D.C.1986); *Hummel v. Koehler*, 458 A.2d 1187 (D.C. 1983); *Rose v. Silver*, 394 A.2d 1368 (D.C. 1978). Plaintiff also relies on *Cohane v. Arpeja–California, Inc.*, 385 A.2d 153, 158 (D.C.), *cert. denied*, 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978), but in that case the non-resident defendant was being sued by a salesman whom the defendant had contracted with to enter the District in order to solicit sales. The subject matter of that suit concerned commissions arising at least in part out of those sales in the District. The non-resident defendant in *Cohane* clearly sought out contact with the District of Columbia when it specifically endeavored to make sales in the District.

Plaintiff's second theory is that Finshipyards' contractual relationship with Zaire, which entitled Finshipyards to commissions for processing the Zairean account, is relevant to the jurisdictional inquiry. The Court finds the connection between the economic benefit contracted for and received by Finshipyards and the District of Columbia too attenuated to provide a basis for jurisdiction here. The benefit did not arise out of Finshipyards' activities in the District; it arose from *Zaire's use* of COMSAT LESs in Connecticut, California and Turkey. *See Bueno v. La Compania Peruana de Radiodifusion, S.A.*, 375 A.2d at 8–9. The argument that jurisdiction over Finshipyards can be derived from its agreement with Zaire fails because no facts suggest that Finshipyards' involvement with Zaire was purposely directed toward the District of Columbia. *See Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 946–47 (4th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1103, 130 L.Ed.2d 1070 (1995). As noted above, the "unilateral activity of another party or third person" is not a sufficient basis for establishing minimum contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. at 475, 105 S.Ct. at 2183.

Plaintiff points out that as a result of Zaire's use of COMSAT LESs, Finshipyards received monthly invoices from COMSAT for Zaire's phone charges that reflected COMSAT's Washington, D.C., address. Finshipyards processed those invoices and paid COMSAT monthly, by wire transfer to New York State. Throughout the entire period COMSAT's principal place of business was Washington, D.C.

To be sure, COMSAT did conduct business, including billing for Zaire's telecommunications service, in the District of Columbia. Those activities, however, were related to its supplying telecommunications service to *Zaire*, not for the provision of any services to Finshipyards or receipt of services from Finshipyards. Even if these administrative services could be construed to have been performed for the benefit of Finshipyards, they were not integral to Finshipyards' operations in a way that would be necessary to show that Finshipyards purposely availed itself of the privilege of doing business in the District of Columbia. *See Health Communications, Inc. v. Mariner Corp.*, 860 F.2d 460, 464 (D.C.Cir.1988); *United States v. Ferrara*, 54 F.3d 825, 830 (D.C.Cir.1995). "A plaintiff may not ... depend upon his own activity to establish the existence of minimum contacts;

the defendant must in some way have voluntarily and purposefully availed himself of the protection of the forum state's laws." *Reiman v. First Union Real Estate Equity & Mortgage,* 614 F.Supp. 255, 257 (D.D.C.1985); *Environmental Research Int'l, Inc. v. Lockwood Greene Engrs., Inc.,* 355 A.2d at 812 (rejecting argument that activities performed by the plaintiff for the benefit of the defendant could constitute a basis for personal jurisdiction in the District of Columbia).

Nor are the limited fax and telephone communications between COMSAT's office in Washington, D.C., and Finshipyards, including some which were initiated by Finshipyards, sufficient to demonstrate that Finshipyards purposely availed itself of the privilege of transacting business in the District of Columbia. While these contacts were in part by mail and wire into the District of Columbia, the fact that Finshipyards was required to communicate with COMSAT at its offices in the District of Columbia regarding invoices has not been shown to arise out of any desire of Finshipyards to do business with COMSAT in Washington, D.C. Nor did it establish the minimum contacts that would put the defendant on notice of the possibility of being haled into court here.

The first fax communication cited by COMSAT that came from Finshipyards concerned a statement of account provided by COMSAT that was missing a particular invoice. COMSAT then sent that invoice by fax to Finshipyards. Declaration of John Strand ¶ 19. The sole purpose of the communications regarding the missing invoice was to correct a mistake apparently of COMSAT's own making. These communications do not evidence any purpose on the part of *Finshipyards* to do business in the District of Columbia. *See Jadair, Inc. v. Walt Keeler Co., Inc.,* 679 F.2d 131, 134 (7th Cir.), *cert. denied,* 459 U.S. 944, 103 S.Ct. 258, 74 L.Ed.2d 201 (1982); *United States v. Ferrara,* 54 F.3d at 831 (a "single, responsive mailing cannot constitute the 'meaningful' contact or 'substantial connection' between the defendant and the forum state.") (internal citations omitted).

The second contact occurred that same day when an unidentified person at Finshipyards allegedly telephoned an unidentified person at COMSAT to indicate when it would remit payment for certain bills. Strand Decl. ¶ 18. This contact, even if substantiated, is simply not very substantial and is no evidence of any intent on the part of Finshipyards to do business in the District of Columbia. Moreover, "[i]f a party's slightest gesture of accommodation were to impose personal jurisdiction, commercial dealings would soon turn unobliging and brusque." *Chung v. NANA Development Corp.,* 783 F.2d at 1129.

Plaintiff maintains that after Zaire stopped paying its bills in a timely fashion Finshipyards entered into agreements with COMSAT to pay certain amounts due. COMSAT cites one fax sent by Finshipyards informing LES operators from whom it received bills to bar telephone calls originating from the Zaire terminals. The fax to LES operators is a specific contact between Finshipyards and the District of Columbia, but it is not a contact made in order to conduct business with or related to the transaction of business between COMSAT and Finshipyards. The fax relates to business between Finshipyards and Zaire. As discussed above, that relationship was not purposely directed towards the District of Columbia by Finshipyards.

Having found plaintiff's other theories legally insufficient to establish minimum contacts, the Court is left to consider plaintiff's allegations regarding eight additional communications between itself and Finshipyards. Because plaintiff has not identified who initiated the contacts, when they were made, and for what purpose, the Court has no basis on which to judge whether these alleged communications could constitute purposeful availment of the privilege of doing business in the District of Columbia. The fact that mail and wire communications may have occurred between COMSAT in the District of Columbia and Finshipyards does not, standing alone, provide a basis for jurisdiction, however. *See, e.g., Health Communications, Inc. v. Mariner Corp.,* 860 F.2d at 461. In the face of COMSAT's lack of specificity, even in the aggregate these fax and telephone communications with the District of Columbia forum do not manifest the deliberate and voluntary association with the Dis-

trict of Columbia that is necessary to invoke the jurisdiction of this Court. *See Bank of Cape Verde v. Bronson,* 869 F.Supp. 21 (D.D.C.1994); *see also Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1076–77 (10th Cir.1995).[4]

### 2. Contracting to Supply Services

With respect to its implied contract claim, COMSAT argues that Finshipyards is subject to jurisdiction under the "contracting to supply services" provision of the District of Columbia long-arm statute. D.C.Code § 13–423(a)(2). COMSAT rests this argument on the allegation that COMSAT provided services to and for the benefit of Finshipyards and that International Telecommunications Regulations ("ITRs") oblige Finshipyards to pay COMSAT despite the fact that Zaire might not have paid Finshipyards.

The case law interpreting the "contracting to supply services" provision of the District of Columbia long-arm statute is sparse. The minimum contacts analysis above may alone command the finding that the "contracting to supply services" provision of the statute fails to provide a basis for jurisdiction on the facts alleged in this case.

 In addition, the Court finds that the "contracting to supply services" provision, by its own terms, would not cover Finshipyards' conduct because it only applies to a non-resident who injects itself into the District by agreeing to provide some service to the resident in the District. *See Textile Museum v. F. Eberstadt & Co., Inc.,* 440 F.Supp. 30, 32, 33 (D.D.C.1977). Finshipyards has not done so here and COMSAT's own activities in the District are irrelevant.

The mere existence of a contract between a non-resident and a resident is not a suffi-

cient basis on which to claim jurisdiction over the non-resident in the District of Columbia. *See Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Willis v. Willis,* 655 F.2d at 1338. The Court must consider the terms of the alleged implied contract and whether the implied contract obligates Finshipyards to provide services in the District of Columbia. In this case, the contract was neither made nor performed in the District, and no services were provided or to be provided here.

 Plaintiff argues that, under the implied contract resulting from Finshipyards' agreement to comply with the ITRs, Finshipyards is obligated to pay COMSAT for telecommunications charges incurred by Finshipyards' client regardless of whether the client has paid Finshipyards. The ITRs referenced by plaintiff provide:

> 4.1 All international … telecommunications accounts shall be paid by the accounting authority without delay and in any case within six calendar months after dispatch of the account....

> 4.2 If international … telecommunications accounts remain unpaid after six calendar months, the administration that has licensed the mobile station shall, on request, take all possible steps, within the limits of the applicable national law, to ensure settlement of the accounts from the licensee.

The clear meaning of these regulations is that if accounts are not paid within six months of receipt, the administration that licensed the mobile earth station is responsible for assuring that the licensee, in this case the Zaire defendants, pays its accounts. *See also* Administration of Accounting Authori-

---

**4.** COMSAT requests the opportunity to take discovery concerning the contacts Finshipyards had with the District of Columbia related to this dispute. A District court has discretion whether to hold in abeyance a decision on a motion to dismiss for lack of personal jurisdiction to enable a party to conduct discovery. 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1351, at 253–59 (2d ed. 1990). *See Edmond v. United States Postal General Counsel,* 949 F.2d at 425; *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 788 (D.C.Cir.1983). In this case discovery is not reasonably necessary to

establish jurisdiction. *See Crane v. Carr,* 814 F.2d 758, 760 n. 2 (D.C.Cir.1987). The identity of the persons who took part in the eight communications as well as the purpose of the communications is the sort of information within the knowledge of COMSAT, and jurisdictional discovery would not help COMSAT to learn anything new. In the absence of any showing (let alone a *prima facie* showing) that the Court has personal jurisdiction over Finshipyards, it would be inappropriate to subject Finshipyards to the burden and expense of discovery. The request for discovery is denied.

ties on Maritime Mobile and Maritime Mobile Satellite Radio Services, 58 Fed.Reg. 68,373 (1993) (proposed regulations). Finshipyards neither licensed nor is the licensee of Zaire's mobile earth station. Thus Finshipyards did not agree to take ultimate responsibility for paying telecommunications charges incurred by the Zaire defendants simply by agreeing to comply with the ITRs. Finshipyards has not contracted to supply services in the District of Columbia.[5]

### B. The Communications Act and Rule 4(k), Fed.R.Civ.P.

COMSAT argues that jurisdiction is saved by a new provision to the Federal Rules of Civil Procedure which authorizes service of process (1) with respect to claims arising under federal law, (2) "[i]f the exercise of jurisdiction is consistent with the Constitution and Laws of the United States" and (3) the defendant "is not subject to the jurisdiction of the courts of general jurisdiction of any state." Fed.R.Civ.P. 4(k)(2). If personal jurisdiction is established under Rule 4(k), the Court could decide to exercise supplemental jurisdiction over plaintiff's non-federal claims against Finshipyards. 28 U.S.C. § 1367.

■ "Rule 4(k)(2) only provides federal courts with personal jurisdiction over a foreign defendant in federal question cases and only if the foreign defendant has sufficient contacts with the United States to satisfy due process requirements." *Eskofot A/S v. E.I. Du Pont de Nemours & Co.*, 872 F.Supp. 81, 87 (S.D.N.Y.1995). There is no need in this case to determine whether Finshipyards has sufficient minimum contacts with the United States because the Court concludes that COMSAT has failed to state a federal claim under the Communications Act of 1934, 47 U.S.C. § 203.

Section 203 of the Communications Act requires common carriers to file with the Federal Communications Commission a tariff of the rates charged for its services. 47 U.S.C. § 203(a). That tariff sets the terms of the contract between the carrier and the purchaser of telecommunications services. *MCI Telecommunications Corp. v. TCI Mail, Inc.*, 772 F.Supp. 64, 66 (D.R.I.1991). Several courts have held that an action by a carrier against its customer to collect unpaid telecommunications charges states a claim under section 203. *MCI Telecommunications Corp. v. Graham*, 7 F.3d 477, 479 (6th Cir.1993); *MCI Telecommunications Corp. v. Garden State Inv. Corp.*, 981 F.2d 385 (8th Cir.1992); *Ivy Broadcasting Co. v. AT & T Co.*, 391 F.2d 486 (2d Cir.1968). These courts have reasoned that the Communications Act created federal rights and obligations, wholly apart from any contract to pay certain prices for phone service. By contrast, in *MCI Telecommunications v. Credit Builders*, 980 F.2d 1021 (5th Cir.), *cert. granted and judgment vacated to consider mootness*, —— U.S. ——, 113 S.Ct. 2925, 124 L.Ed.2d. 676 (1993), the Fifth Circuit held that a carrier of telecommunications services was limited to a state law contract or quantum meruit action and that no federal claim exists under section 203. The District of Columbia Circuit has not had occasion to address whether such a federal claim exists.

Even if such a federal claim exists, however, the Court is persuaded by defendant's argument that the cause of action would lie only against the user of the carrier's services. Section 203 imposes a responsibility for payment of charges outlined in the filed tariff. The "charges" are defined to include "charges for, or services in connection with, the use of common carrier lines of communication. . . ." 47 U.S.C. § 202(b). COMSAT has not alleged that Finshipyards ever made use of its telecommunications services or telecommunications lines. Nor, as explained above, has COMSAT established that Finshipyards is the party responsible for paying the charges incurred by Zaire. Count VII of

---

5. COMSAT seeks discovery related to the implied contract issue and has particularly requested an opportunity to depose Mr. Camoletto on Finshipyards' "belief" that it is not liable under the ITRs to pay the charges for which Zaire has not yet paid it. Because plaintiffs rely on the ITRs to provide the essential terms of the implied contract and the Court is capable of interpreting the meaning of those terms so long as they are not ambiguous, the requested discovery would be of minimal significance. The request is denied. *See* note 4 *supra*.

COMSAT's complaint therefore fails to state a claim for relief and must be dismissed.

### III. CONCLUSION

For the reasons stated above, the Court concludes that it lacks personal jurisdiction over Finshipyards. An Order consistent with this Opinion is entered this same day.

### *ORDER*

For the reasons stated in the Opinion issued this same day, it is hereby

ORDERED that defendant Finshipyards' Motion To Dismiss is GRANTED; and it is

FURTHER ORDERED that Counts I, V and VII of COMSAT's Complaint are DISMISSED insofar as they relate to Finshipyards.

SO ORDERED.