Harold SCHWARTZ, Plaintiff,

v.

CDI JAPAN, LTD., et al., Defendants.

Civil Action No. 1:95CV0775.

United States District Court,
District of Columbia.

June 21, 1996.

William R. Mauck, Jr. and Henry C. Su, Williams, Mullen, Christian & Dobbins, Richmond, VA, for Plaintiff.

Grace E. Speights, Morgan, Lewis & Bockius, Washington, D.C., for Defendants.

## *MEMORANDUM OPINION AND ORDER*
### DENYING DEFENDANTS'
### MOTION TO DISMISS

URBINA, District Judge.

This matter comes before the court upon the defendants' motion to dismiss for lack of personal jurisdiction, made pursuant to Fed. R.Civ.P. 12(b)(2). After considering the parties' submissions, the court concludes that both defendants have transacted business in the District of Columbia and that the plaintiff's claim is intricately related to the activi-

ties that the defendants have pursued in this jurisdiction. Accordingly, the court concludes that it may exercise jurisdiction over the defendants.

## I. Background

This suit arises out of the purported breach of an agency contract that the plaintiff alleges existed between the defendants and himself. Harold D. Schwartz, (Schwartz) is a U.S. citizen who resides in Greenwood, Virginia. The two defendants are CDI Japan, Ltd. (CDI Japan) and Harezo Shimizu (Shimizu). CDI Japan is a corporation organized under the laws of Japan; its principal place of business is in Japan. Mr. Shimizu is a Japanese citizen who resides in Tokyo, Japan.

In 1991, Mr. Schwartz and Michael K. Tsumaki (Tsumaki) began working on a project to export American art to Japan. Mr. Tsumaki was the manager of the Smithsonian American Art Project Preparatory Committee in Japan. The project entailed the production, distribution, and sale of a compact disk-interactive program (CD–I) whose purpose was to educate consumers about American art contained in the collections of the Smithsonian Institution's National Museum of American Art (NMAA). Mr. Schwartz and Mr. Tsumaki intended that a company known as "CDI Japan" would manufacture, market, and distribute the CD–I program under a licensing agreement with the NMAA. In April 1994, Mr. Tsumaki entered into a contract with the NMAA that, among other things, would include the development of the CD–I program. Mr. Schwartz served as Mr. Tsumaki's authorized representative in the U.S. Mr. Tsumaki was to compensate Mr. Schwartz for his services pursuant to a Distributorship Agreement entered into by Mr. Tsumaki and Mr. Schwartz on July 10, 1994 (Distributorship Agreement).

In May 1994, Mr. Shimizu, Mr. Tsumaki and Mr. Shimizu's son, Kazuharu Ishida (Ishida) established CDI Japan under Japanese law and appointed themselves as CDI Japan's directors. Mr. Schwartz avers that in June 1994, with the NMAA's approval, CDI Japan and Mr. Shimizu, jointly and severally, assumed Mr. Tsumaki's duties and obligations under the Smithsonian contract.[1] Notably, Mr. Tsumaki corroborates this assertion and many of Mr. Schwartz's other declarations.[2] Mr. Schwartz also alleges that CDI Japan and Mr. Shimizu continued to utilize him as their liaison and authorized representative after Mr. Tsumaki resigned from CDI Japan in September, 1994.

Mr. Schwartz asserts that as an agent for the defendants he made numerous trips into the District and met with several individuals at the NMAA. He also claims that he engaged in numerous communications with various people at the NMAA and with other companies with which the defendants expected to enter into distribution contracts. Mr. Schwartz also alleges that in order for Mr. Shimizu to facilitate his communications with Mr. Schwartz, Mr. Shimizu attempted to hire an interpreter and made his computer hardware and software compatible with Mr. Schwartz's.[3]

In November 1994, Mr. Schwartz avers that CDI Japan and Mr. Shimizu made it clear that they did not intend to recognize and honor the Distributorship Agreement that the plaintiff alleges that they had assumed. In December 1994, the defendants hired a local lawyer to advise Mr. Schwartz that he no longer possessed any authority to represent CDI Japan or Mr. Shimizu in connection with the Smithsonian contract or with respect to any other matters. Subsequently Mr. Schwartz filed suit. He alleges breach of an express contract, breach of a contract implied in fact, breach of a contract implied in law, and fraud. Mr. Schwartz seeks the profits denied to him by CDI Japan and Mr. Shimizu and the reasonable value of the services he rendered as the defendants' purported agent in procuring, negotiating, and performing the Smithsonian contract. The issue before the court is whether it may exercise

---

1. Although the formal assignment was not executed until October 1994, CDI and Mr. Shimizu assumed Mr. Tsumaki's duties pursuant to the Smithsonian contract in July 1994.

2. *See gen.* Mr. Tsumaki's Declaration.

3. Apparently, Mr. Shimizu does not have a command of the English language.

**4**

personal jurisdiction over the two defendants.

## II. Analysis

### 1. Summary Judgment

Both sides have presented affidavits and other supplementary materials outside the pleadings. The court will therefore treat the motion as one for summary judgment pursuant to Fed.R.Civ.P. 56. *See* Fed. R.Civ.P. 12(b); *Reiman v. First Union Real Estate Equity & Mortg.*, 614 F.Supp. 255 (D.D.C.1995). Fed.R.Civ.P. 56(c) provides that summary judgment "shall be rendered forthwith, if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." The court must view the facts and any permissible inferences drawn from them in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). A motion for summary judgment requires the court to resolve factual discrepancies in the plaintiff's favor and to view jurisdictional facts in the light most favorable to the plaintiff. *Crane v. New York Zoological Society*, 894 F.2d 454, 456 (D.C.Cir.1990); *Reiman*, 614 F.Supp. at 259.

### 2. Personal Jurisdiction

In determining whether the exercise of personal jurisdiction over a non-resident defendant is proper, the court must engage in a two-part inquiry. The court must ascertain if the state's long arm statute authorizes jurisdiction. *Steinberg v. International Criminal Police Org.*, 672 F.2d 927, 930 (D.C.Cir.1981). If the answer is in the affirmative, the court must then decide whether the exercise of jurisdiction is constitutionally permissible. *Id.*

The plaintiff has the burden of establishing a prima facie showing of the pertinent personal jurisdictional facts over each defendant for a court to exercise personal jurisdiction based on the District of Columbia's long-arm statute. *First Chicago Int'l v. United Exchange Co.*, 836 F.2d 1375, 1378 (D.C.Cir.1988); *Crane*, 894 F.2d at 456. The plaintiff must allege specific facts connecting each defendant with the forum state and cannot rest on bare allegations or conclusory statements. *First Chicago Int'l*, 836 F.2d at 1378. The court, however, should focus on the qualitative rather than the quantitative nature of the defendants' contacts. *Mouzavires v. Baxter*, 434 A.2d 988 (D.C.App.1981) (*en banc*), *cert. denied* 455 U.S. 1006, 102 S.Ct. 1643, 71 L.Ed.2d 875 (1982).

Section 13–423(a)(1) of the District of Columbia long-arm statute provides that a court may exercise personal jurisdiction over a person as to a claim arising from that person's "transacting any business in the District of Columbia." [4] This provision of the long arm statute is co-extensive with the U.S. Constitution's due process guarantee. *Crane v. Carr*, 814 F.2d 758, 762 (D.C.Cir.1987); *Mouzavires*, 434 A.2d at 991–2. Moreover, courts have broadly construed Section 13–423(a)(1). *See Dooley v. United Technologies Corp.*, 786 F.Supp. 65 (D.D.C.1992). To establish personal jurisdiction under Section 13–423(a)(1), a plaintiff must show: (1) that the defendant transacted business in the District; (2) that the claim arose from the business transacted in the District; and (3) that the defendant had minimum contacts with the District such that the Court's exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." *Id.* at 70 (*quoting International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)); *see also Cellutech, Inc. v. Centennial Cellular Corp.*,

---

4. The plaintiff solely relies on section 13–423(a) of the D.C. long-arm statute. Section 13–423 states, in pertinent part,
(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

(1) transacting any business in the District of Columbia;
(b) When jurisdiction over a person is based solely on this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

871 F.Supp. 46, 48 (D.D.C.1994).[5]

■ Section 13–423(a)(1) provides special, not general jurisdiction. Thus, the court must confine its jurisdictional analysis to those contacts of the defendant that "could be said to have *given rise to the claims charged* in the plaintiff's complaint." *First Chicago Int'l*, 836 F.2d at 1377 n. 2 (emphasis in the original). There is an important distinction between general and specific jurisdiction. General jurisdiction provides adjudicatory authority to entertain a suit against a defendant without regard to the underlying claim's relationship to the defendant's activity in the entertaining jurisdiction. *Steinberg*, 672 F.2d at 928. Specific jurisdiction entails the ability to entertain controversies based on acts of a defendant that touch and concern the forum. *Id.* at 928. Section 13–423(b) states that "only a claim for relief arising from the acts enumerated in this section may be asserted against him" and limits section 13–423(a)(1). Consequently, section 13–423(b) disallows claims that do not relate to the acts that form the basis for personal jurisdiction. *Willis v. Willis*, 655 F.2d 1333, 1336 (D.C.Cir.1981); *see also Trerotola v. Cotter*, 601 A.2d 60 (D.C.1991).

Applying these principles, the court concludes that the plaintiff has alleged facts evidencing purposeful activity that the defendants have pursued in this jurisdiction. Moreover, this purported activity relates to the underlying claim. Consequently, the court's exercise of personal jurisdiction over the defendants would not offend traditional notions of fair play and substantial justice and is therefore constitutional. In addition, the court notes that at this early juncture dismissal would be inappropriate. There are important points that are in controversy by the parties and that are genuine issues of material fact. Namely, the factual predicate that determines whether an agency relationship existed between Mr. Schwartz and the

defendants is a disputed material issue of fact precluding summary judgment.

**A. Mr. Shimizu Transacted Business in the District of Columbia**

■ Mr. Shimizu asserts that the plaintiff failed to illustrate with sufficient specificity that personal jurisdiction is proper in this forum. Mr. Shimizu states that he is a Japanese citizen who has neither an agent in the District nor has set foot in the District. He avers that the fact that he co-signed the assignment of the Smithsonian contract is an isolated contact that does not permit this court to exercise personal jurisdiction over him. Mr. Shimizu also asserts that he did not have a role in developing, soliciting or negotiating the Smithsonian contract since Mr. Tsumaki negotiated the contract prior to meeting Mr. Shimizu and since he did not assume the Smithsonian contract until October 1994. Finally, Mr. Shimizu maintains that the plaintiff fails to provide any support for the proposition that when a non-resident defendant assumes a contract with a third-party District resident, that defendant has transacted business in the District.

■ The "transacting any business" provision of the District's long arm statute embraces the contractual activities of a non-resident defendant that cause repercussions in the District. *Mouzavires*, 434 A.2d at 992. It is therefore "sufficient . . . that the suit [be] based on a contract which [has] [a] substantial connection with the district." *Mouzavires*, 434 A.2d at 993 (*quoting McGee v. Int'l Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)). The fact that Mr. Shimizu has never set foot in the District is not dispositive. *Reiman*, 614 F.Supp. at 256–257 (internal citations omitted).[6] The focus is on the quality and nature of contacts, and these contacts must illustrate a deliberate and voluntary association with the forum on the part of the defendant. *Mouzavires*, 434 A.2d at 995. Thus, a non-resident defendant may be subject to person-

---

**5.** Although the plaintiff engages in a discussion of the "Government Contacts" principle, the defendants have not advanced this ground as one that would preclude the court from exercising personal jurisdiction over them. Moreover, the court concludes that the doctrine is presently not applicable.

**6.** In *Reiman*, the court stated that, "a non-resident defendant may be considered to have transacted business within the meaning of Section 13–423(a)(1) without ever having been physically present in the District. . . ." *Id.*

al jurisdiction even if he has never been physically present in the forum state and where his only contacts have been by mail or telephone. *Id.* · This is so because, as the Supreme Court has observed, modern telecommunication systems make physical presence in the solicitation and negotiation of business relationships unnecessary. *McGee*, 355 U.S. at 222, 78 S.Ct. at 200.

■ Although a defendant's contract with a forum resident will not automatically establish minimum contacts sufficient to confer personal jurisdiction, factors including "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" are relevant to the determination. *Reiman*, 614 F.Supp. at 258 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–481, 105 S.Ct. 2174, 2184–2187, 85 L.Ed.2d 528 (1985)). Although Mr. Shimizu did not develop, solicit or negotiate the contract entered into by Mr. Tsumaki and the NMAA, the fact that he negotiated the assignment of the Smithsonian contract and contemplated future consequences in addition to the parties' course of dealing constitutes transacting business in this forum.[7]

Specifically, Mr. Schwartz maintains that he and Mr. Shimizu re-negotiated various terms of the Smithsonian contract and altered other documents such as the CD–ROM's budget and payment schedule. Mr. Schwartz further asserts that Mr. Shimizu updated him on the status of the assignment of the Smithsonian contract and that he informed Mr. Shimizu of discussions with the NMAA concerning the Smithsonian contract. Mr. Schwartz has also provided the court with correspondence that demonstrates an ongoing relationship between the parties.

He also asserts that Mr. Shimizu directed . him to act on Mr. Shimizu's behalf regarding other business projects that the defendants sought to pursue with the Smithsonian. Furthermore, Mr. Schwartz maintains that Mr. Shimizu took steps to get an interpreter so that he could facilitate his working relationship with Mr. Schwartz and so that he could respond more quickly to Mr. Schwartz's letters.

■ Where a non-resident has solicited the business relationship and the contract calls for the performance of work within the District, the court may find that the transaction has such a substantial connection with the District such that the exercise of personal jurisdiction is permissible. *Reiman*, 614 F.Supp. at 258; *Mouzavires*, 434 A.2d at 995. The plaintiff avers that the Smithsonian contract will have been at least partly performed in the District. Section 25.5 of the Smithsonian contract provides that the laws of the District govern the agreement and that it is deemed to have been executed and performed within the boundaries of the District.[8] Sections 4.7 and 4.9 require the defendants to supervise and fund the development of the CD–ROM Catalog and to deliver copies to the NMAA for archival and distribution purposes. Sections 5.4, 5.5, and 5.7 require the defendants to fund the costs associated with the product development and to supply the NMAA with 100 free copies of the CD–I project. Under Sections 8.5 and 8.6, the defendants must provide copies of the catalog to the Smithsonian Institution's Libraries and to the NMAA. Finally, Section 13.1 states that the defendants agreed to make payments and reimbursements to the NMAA in its account at the American Security Bank located in the District.

7. *See McGee*, 355 U.S. 220, 78 S.Ct. 199. In *McGee*, the Supreme Court upheld a California state court's exercise of personal jurisdiction over a Texas insurance company whose only contacts with California were a reinsurance certificate mailed to the plaintiff in California and the acceptance of premiums mailed by the plaintiff from California. The court stated that, "[I]t was sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." *Id.* at 223, 78 S.Ct. at 201.

8. Mr. Shimizu asserts that, in his individual capacity, he does not have sufficient contacts with the District to satisfy the due process requirement for personal jurisdiction. However, the court finds that Mr. Shimizu was not merely acting on behalf of CDI Japan or supervising employees' activities in the District. *See Wiggins v. Equifax, Inc.*, 853 F.Supp. 500 (D.D.C.1994). As a personal signatory to the assignment of the Smithsonian contract, Mr. Shimizu personally invested in the CD–I program. Thus, Mr. Shimizu was conducting business not only on behalf of CDI Japan but also as an individual investor.

## B. CDI Japan Transacted Business in the District of Columbia

CDI Japan maintains that it did not transact business in the District; that Mr. Schwartz cannot rely on his own contacts with the District to establish jurisdiction over CDI Japan; and that Mr. Schwartz was neither CDI Japan nor Mr. Shimizu's agent. CDI Japan further asserts that it has not "transacted business" in the District because it is not incorporated in the District; it is not authorized to do business in the District; it has no agent or employee in the District; and finally, because it has not solicited any business in the District. CDI Japan maintains that its only contact with the District was to contract with the NMAA. CDI Japan claims that it conducted only limited mail and telecommunication contacts, including payments, between Japan and the NMAA's offices in the District. Furthermore, CDI Japan asserts that merely contracting with a third party in the District does not equal "transacting business" under the District's long-arm statute.

█ CDI Japan's contacts with the District entail more than a single occurrence at Mr. Schwartz's invitation. CDI Japan has engaged in more than merely contracting with a third party in the District. Mr. Schwartz asserts that not only did the defendants assume the Smithsonian contract, but they were also to assume any other contracts that Mr. Tsumaki entered into with the Smithsonian Institution. The defendants intended to assume these obligations in order to reap the financial benefits from transacting business in this forum. Furthermore, Mr. Schwartz contends that he is not merely relying on his own contacts with the forum to assert personal jurisdiction over the defendants. Mr. Schwartz asserts that he was CDI Japan and Mr. Shimizu's agent.

The acts of a corporation's agent may create personal jurisdiction over the corporation in the District. *Chase v. Pan–Pacific Broadcasting, Inc.,* 617 F.Supp. 1414, 1424 (D.D.C. 1985). To determine if a party is an "agent", the court looks to the entire relationship for evidence of mutual consent and a sufficient degree of control exercised by the principal. *Johnson v. Bechtel Assoc. Professional Corp.,* 717 F.2d 574, 580 (D.C.Cir.1983), *rev'd on other grounds sub nom, Washington Metro. Area Transit Auth. v. Johnson,* 467 U.S. 925, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984). An agency relationship is the "fiduciary relation which results form the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (Second) of Agency Section 1(1) (1958). "Whether an agency relationship exists is a question of fact for which the person asserting it carries the burden of proof." *Smith v. Jenkins,* 452 A.2d 333, 335 (D.C.1982). The defendant claims that no agency relationship existed between the defendants and Mr. Schwartz and that Mr. Schwartz failed to show any specific facts illustrating that he transacted business on their behalf.

Although the defendants claim that no agency relationship existed, the plaintiff has submitted evidence to the contrary. Importantly, Section 17.3 of the Smithsonian contract states that Mr. Schwartz was Mr. Tsumaki's representative for the purposes of liaison, direction and coordination of daily operational matters. CDI Japan and Mr. Shimizu assumed this contract, and they have not asserted that this provision is now nugatory.[9] Furthermore, the plaintiff asserts that the defendants made assurances that they would compensate Mr. Schwartz by honoring the terms of the Distributorship Agreement between Mr. Tsumaki and Mr. Schwartz. Mr. Schwartz also alleges that with his assistance, CDI Japan negotiated and solicited the assignment of the Smithsonian contract.[10] In addition, Mr. Schwartz

---

**9.** The plaintiff provided Amendment # 1, Assignment of the Smithsonian contract. The amendment did not include a modification of Section 17.3.

**10.** *See Abramson v. Wallace,* 706 F.Supp. 1 (D.D.C.1989) (upholding personal jurisdiction over a non resident defendant who negotiated and partly performed an oral contract in the District); *compare Mitchell Energy Corp. v. Mary Helen Coal Co., Inc.,* 524 F.Supp. 558, 563 (D.D.C.1981) (denying personal jurisdiction when the plaintiff, a District corporation, solicited the non-resident defendant at its out of state

asserts that he performed several functions for the defendants in the District. These functions included making trips into the District on the defendants' behalf; meeting with several individuals at the NMAA; and discussing and coordinating various details concerning the projects contemplated by the Smithsonian contract as well as other possible ventures.

The plaintiff has also submitted correspondence that illustrates an ongoing relationship between CDI Japan, Mr. Shimizu, Mr. Schwartz, and the NMAA that lasted a number of months. Correspondence between Mr. Schwartz and Mr. Shimizu illustrates that prior to sending letters or faxes to the NMAA regarding the Smithsonian contract, Mr. Shimizu would approve Mr. Schwartz's draft letters and would direct him as to what course of action to pursue. Mr. Shimizu notified Mr. Schwartz as to "a line of action which CDI Japan would like the NMAA to put into action." [11]

Additionally, Mr. Dietz, Chief of Publication at the NMAA, directly corresponded with Mr. Schwartz. In May 1994, Mr. Schwartz wrote a letter written on behalf of CDI Japan and Mr. Tsumaki to Mr. Dietz that informed him of the formation of CDI Japan and its purpose in assuming Mr. Tsumaki's responsibilities. Mr. Dietz responded directly to Mr. Schwartz and approved CDI Japan's name, its purpose, and he discussed the project's budget and development. Furthermore, Mr. Dietz continued to correspond with Mr. Schwartz regarding the development of the CDI project. For instance, they corresponded regarding amendments to the Smithsonian contract prior to CDI Japan and Mr. Shimizu's assumption of it. An October 1994 letter from Mr. Dietz to Mr. Shimizu discussed the contract assignment and negotiations that Mr. Dietz and Mr. Schwartz were conducting with Time Warner regarding a distributing contract. Other correspondence between Mr. Schwartz, Mr. Shimizu, and Mr. Dietz includes discussions concerning a possible joint venture between the defendants, the NMAA, and other companies that would pursue the development of a com-

pact disk product. In sum, Mr. Shimizu has provided the court with sufficient, specific factual allegations that, are in many instances, corroborated by Mr. Tsumaki. As a result, whether an agency relationship existed is a contested issue that precludes summary judgment.

### C. Mr. Schwartz's Claim Arises from the Business Transacted by the Defendants in the District

Having concluded that the defendants transacted business in the District, the court must now determine if the plaintiff has sufficiently demonstrated that his claim for relief arises from the defendants' conduct in this jurisdiction. The inquiry is whether the non-resident's "conduct and connection with the forum state are such that he or she should reasonably anticipate being haled into court there." *Trerotola*, 601 A.2d at 64 (*quoting World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). CDI Japan and Mr. Shimizu's contacts with the District must have been "of such a quality and nature that they manifest[ed] a deliberate and voluntary association with the forum" and could anticipate having to litigate in the District. *Mouzavires*, 434 A.2d at 995.

Presently, Mr. Schwartz's claim arises from the defendants' activities in the District. Specifically, Mr. Schwartz's claim arises out of the Smithsonian contract that the defendants assumed and the rights and obligations associated with it. Centrally involved in this suit is the alleged agency relationship that existed between the plaintiff and the defendants, as a result of the parties' course of dealing and the Smithsonian contract. Moreover, the defendants' contacts with this jurisdiction makes it reasonable for them to expect to be subject to this forum's jurisdiction. *See Trerotola*, 601 A.2d at 64. The court thus concludes that section 13–423(a)(1) authorizes jurisdiction and that the exercise of jurisdiction is constitutionally permissible and otherwise appropriate under the circumstances surrounding this case.

Accordingly, it is this 21 day of June 1996,

---

home office and when the parties performed the contract outside of the District).

**11.** Facsimile correspondence from Mr. Shimizu to Mr. Schwartz. *See* the plaintiff's Ex. 30.

**ORDERED** that the defendants' motion to dismiss be and is hereby **DENIED.**

**SO ORDERED.**