**OVERSEAS PARTNERS, INC., Plaintiff,**

v.

**PROGEN MUSAVIRLIK VE YONETIM HIZMETLERI, LTD. SIKERTI, Necmettin Öztemir, Muammer Agim, Gumussuyu Hali Sanayi ve Ticaret A.S., Seda Gengoru, Meral Agim, M. Onur Agim, and Gamze Ozoguz, Defendants.**

Civil Action No. 96–2219 SSH.

United States District Court, District of Columbia.

July 28, 1998.

---

Thomas O. Gorman, Claire C. Robinson, Porter, Wright, Morris & Arthur, Washington, DC, for Plaintiff.

Campbell Killefer, Darryl G. McCallum, Shaw, Pittman, Potts & Trowbridge, Washington, DC, for Defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are defendants' amended renewed motion to dismiss for lack of personal jurisdiction, insufficient service of process, and *forum non conveniens*, and related pleadings.[1] After careful consideration of the entire record, the Court finds that it has jurisdiction over defendants PROGEN Musavirlik ve Yonetim Hizmetleri, Ltd. Sikerti and Necmettin Öztemir, but concludes that the instant action should be dismissed on *forum non conveniens* grounds as to those defendants.[2] As to the other defendants, the

---

1. Defendants' amended renewed motion to dismiss incorporates defendants' first motion to dismiss filed November 4, 1996.

2. In considering these motions, the Court has relied upon both the pleadings and affidavits submitted by the parties. The Court's consideration of the affidavits does not convert these motions to dismiss into motions for summary judgment, because "the plain language of Rule 12(b) permits only a 12(b)(6) motion to be converted into a motion for summary judgment."

case is dismissed for lack of personal jurisdiction.

## BACKGROUND

Plaintiff Overseas Partners, Inc. ("OPI"), is a Delaware corporation headquartered in the District of Columbia ("the District"). OPI describes itself as a company that specializes in developing complex real estate projects in the countries of the former Soviet Union as well as other developing countries such as Turkey. Am. Compl. ¶ 13.

OPI alleges that PROGEN Musavirlik ve Yonetim Hizmetleri, Limited Sikerti ("PROGEN"), a Turkish limited liability company, Necmettin Öztemir, Muammer Agim, Gumussuyu Hali Sanayi Ticaret A.S. ("Gumussuyu"), Seda Gengoru, Meral Agim, M. Onur Agim, and Gamze Ozoguz (collectively, "defendants") breached ,a contract with OPI, that defendants were unjustly enriched at the expense of plaintiff as the result of the breach, and that defendants misrepresented their intentions to fulfill their part of the contract. Am. Compl. ¶¶ 36–53. The alleged breach concerns the parties' failed attempt to develop an office, residential, and shopping center complex in Istanbul, Turkey, known as "MetroCity."

The relationship between the two companies began in 1995 when OPI's president, Sahir Erozan, while on business in Turkey, met Savci Eker, PROGEN's project manager. After a series of meetings and negotiations, both in the District and in Turkey, the parties signed a contract, known as "the Protocol," on December 15, 1995. *Id.* ¶¶ 15–18. The Protocol included a forum-selection clause providing that "[a]ny conflict arising between the Parties as a result of this Protocol shall be resolved by the Istanbul, Sultanahmet Court and Directorates of Execution according to the laws of the Republic of Turkey." *See* Protocol § 6.

Although neither party disputes the Protocol's validity as a contract or that the language is clear, the parties differ regarding the breadth of its overall scope, as well as the interpretation of several key clauses. Plaintiff contends that the parties agreed to a multi-phase agreement and that the Protocol contained the specific terms for only the first phase agreement. Plaintiff asserts that phase one, which was the subject matter of the Protocol, was never breached, and therefore the Protocol is irrelevant to the dispute at hand. Plaintiff claims that on March 2, 1996, the next phase of the agreement was signed and executed, and that this second phase agreement was breached and constitutes the subject matter of this suit. *See* Am. Compl. ¶ 18. Defendants counter that the Protocol was the only contract formed and that it covers the conduct at issue in this suit. Defendants contend that the document cited by plaintiff as the phase two agreement is nothing more than a signed copy of notes taken at a meeting and is not evidence of the formation of an additional contract.

Plaintiff also asserts that, even if the Protocol were to apply to the conduct at issue here, the choice-of-law and forum-selection clause is unenforceable because it is the product of duress. Plaintiff contends that the choice-of-law and forum-selection clause was not ever negotiated but was added later during a payment dispute, and that this constitutes duress. Defendants counter that plaintiff has failed to allege facts which, even if true, could constitute duress, and contend that the clause is enforceable.

## ANALYSIS

### I. *Lack of Service*

Defendants first argue that the Court should dismiss this case with respect to all defendants except Öztemir because they were never served with a summons and a copy of the complaint as required by Federal Rule of Civil Procedure 4. Although the 120-day time limit established by Rule 4(m) does not apply to foreign service of process, courts generally apply a "flexible due diligence" standard for determining whether service of process on a foreign defendant was timely.

*See Haase v. Sessions,* 835 F.2d 902, 905 (D.C.Cir.1987); *see also Wilson–Cook Medical, Inc. v. Wilson,* 942 F.2d 247, 252 (4th Cir.1991) (12(b)(2) and 12(b)(3) motions); *Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295, 298 (S.D.N.Y.1996) (12(b)(2) motion), *aff'd.* 126 F.3d 25 (2d Cir.1997).

*See, e.g., James v. Rutil (S.R.L.),* 1997 WL 151174 at *5 (S.D.Ind.1997); *Standard Commercial Tobacco Co. v. Mediterranean Shipping Co., S.A.,* 1995 WL 753901 at *1 (S.D.N.Y.1995); *In re Crysen/Montenay Energy Co.,* 166 B.R. 546, 552 (S.D.N.Y.1994). Defendants contend that plaintiff has not met even this generous standard, since this case has been pending for more than a year and a half.

Plaintiff, however, argues that defendants have waived any defense they may have had based on insufficiency of service of process because defendants did not raise the issue in their first Rule 12 motion. *See* Fed.R.Civ.P. 12(h)(1). Defendants counter that they have not waived their objections to plaintiff's failure to serve in a diligent manner because such an objection was not available to them at the time their first motion to dismiss was filed. *See* Fed.R.Civ.P. 12(g); *Chatman–Bey v. Thornburgh,* 864 F.2d 804, 813 n. 8 (D.C.Cir.1988); *Glater v. Eli Lilly & Co.,* 712 F.2d 735, 738 (1st Cir.1983). In light of this Circuit's strong preference for decisions on the merits of an action rather than on procedural grounds, *see Trakas v. Quality Brands, Inc.,* 759 F.2d 185, 189 (D.C.Cir.1985), the Court determines that defendants have waived any objection they may have had to service of process. Although the Court acknowledges that any objection to plaintiff's failure to serve defendants in a diligent manner was not available at the time defendants filed their first Rule 12 motion, that defense certainly came "available" in the past year. Defendants' failure to amend their motion once the defense of insufficient service of process became "available" thus constituted a waiver of that defense.[3]

## II. *Personal Jurisdiction*

■ It is well-established that a court may not consider a *forum non conveniens* motion

unless it has personal jurisdiction over the parties. *See Allstate Life Ins. Co. v. Linter Grp. Ltd.,* 782 F.Supp. 215, 219 (S.D.N.Y. 1992) (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 504, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)); Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure 2d, Jurisdiction § 3828 (1986). Accordingly, the Court next considers defendants' jurisdictional objections. *See Allstate Life Ins.,* 782 F.Supp. at 219; *see also Syndicate 420 at Lloyd's London v. Early Amer. Ins. Co.,* 796 F.2d 821, 826 n. 8 (5th Cir.1986); *Thomson Info. Servs. Inc. v. British Telecommunications, plc,* 940 F.Supp. 20, 22 & n. 2 (D.Mass.1996).

■ District of Columbia law controls the jurisdiction of this Court over a nonresident defendant. *See Crane v. Carr,* 814 F.2d 758, 762 (D.C.Cir.1987). A plaintiff need only present a *prima facie* case that personal jurisdiction exists in order to survive a motion to dismiss for lack of personal jurisdiction. *See Crane v. New York Zoological Society,* 894 F.2d 454, 456 (D.C.Cir.1990). This *prima facie* requirement must, however, be met with respect to each defendant individually. *See First Chicago Int'l v. United Exchange Co.,* 836 F.2d 1375, 1378 (D.C.Cir. 1988); *Schwartz v. CDI Japan, Ltd.,* 938 F.Supp. 1, 4 (D.D.C.1996). The Court thus addresses its jurisdiction over each defendant in turn.

### A. Necmettin Öztemir

■ Plaintiff represents, and defendants do not dispute, that Öztemir was personally served with the complaint while in the District of Columbia. Physical service of process on Öztemir within the District is clearly sufficient to support the Court's exercise of personal jurisdiction over him.[4] *See Begum*

3. Defendants' passing reference in their original motion to the fact that defendant Öztemir was the only defendant who had been served at the time the motion was filed was insufficient to preserve this objection.

4. The Court, however, rejects plaintiff's suggestion that service on Öztemir, a corporate official of PROGEN, within the District was sufficient for the Court to exercise personal jurisdiction over PROGEN. There is nothing in the *Burnham*

opinion which indicates that the traditional minimum contacts test should be abandoned when an official of a corporation is served within the relevant jurisdiction. *See Wenche Siemer v. Learjet Acquisition Corp.,* 966 F.2d 179, 182–83 (5th Cir.1992), *cert. denied,* 506 U.S. 1080, 113 S.Ct. 1047, 122 L.Ed.2d 356 (1993); *United States v. Nippon Paper Indus. Co.,* 944 F.Supp. 55, 60 (D.Mass.1996), *rev'd on other grounds,* 109 F.3d 1

*v. Auvongazeb,* 695 A.2d 112, 113–114 (D.C. 1997) (citing *Burnham v. Superior Court of California,* 495 U.S. 604, 619, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990)).

## B. PROGEN

■ Plaintiff relies on the "transacting any business" provision of the District's long-arm statute for its assertion of jurisdiction over PROGEN and the other defendants. *See* D.C.Code § 13–423(a)(1) (1981). "Transacting any business" within the meaning of this provision embraces those contractual activities of a nonresident defendant which cause a consequence in the District. *See Schwartz,* 938 F.Supp. at 5 (citing *Mouzavires v. Baxter,* 434 A.2d 988, 992 (D.C.1981), *cert. denied,* 455 U.S. 1006, 102 S.Ct. 1643, 71 L.Ed.2d 875 (1982)). The provision has been interpreted broadly, and it is well-established that it permits jurisdiction to the fullest extent permissible under the due process clause of the United States Constitution. *See, e.g., Schwartz,* 938 F.Supp. at 4; *Mouzavires,* 434 A.2d at 992. The relevant inquiry, therefore, is whether PROGEN had "minimum contacts" with the District such that the exercise of personal jurisdiction would not offend the "traditional notions of fair play and substantial justice." *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ Plaintiff alleges that PROGEN "transacted business" in the District because (1) Savci Eker, the project manager for PROGEN, actively sought out OPI to discuss the MetroCity project; (2) the parties negotiated some of the terms of the Protocol at the Watergate Hotel in the District; (3) agents of PROGEN traveled to the District to visit with potential subcontractors and financial institutions to discuss the MetroCity Project; and (4) the contract between OPI and PROGEN regarding MetroCity contemplated that OPI would perform significant portions of the contract in the District.[5] *See* Am. Compl. ¶¶ 15–21; Affidavit of Sahir Erozan

¶¶ 4–5, 15–16 & 21–23 (Nov. 21, 1996) [hereinafter "Erozan Aff."]. Negotiating or performing business contracts has been held to qualify as "transacting business" for the purposes of the District's long-arm statute. *Abramson v. Wallace,* 706 F.Supp. 1, 2 (D.D.C.1989). This is particularly true where the non-resident solicited the business relationship. *See Schwartz,* 938 F.Supp. at 6; *Mouzavires,* 434 A.2d at 995. Thus, the Court concludes that PROGEN's connections with the District related to the MetroCity project are substantial enough to support the Court's exercise of personal jurisdiction over it in this case.

## C. Muammer Agim

■ A court does not have jurisdiction over individual officers and employees of a corporation just because the court has jurisdiction over the corporation. *See Keeton v. Hustler Magazine,* 465 U.S. 770, 780 n. 13, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Wiggins v. Equifax, Inc.,* 853 F.Supp. 500, 503 (D.D.C.1994). Personal jurisdiction over officers of a corporation in their individual capacities must be based on their personal contacts with the forum, not their acts and contacts carried out solely in a corporate capacity. *Wiggins,* 853 F.Supp. at 503; *see also Schwartz,* 938 F.Supp. at 6 n. 8. Although plaintiff has proffered evidence that Muammer Agim traveled to the District, engaged in contract negotiations in the District, and ultimately signed a contract with a substantial connection to the District, all these activities were apparently carried out on behalf of defendant PROGEN. *See, e.g.,* Protocol Circular Addendum. Since plaintiff has proffered no evidence that Muammer Agim had personal contact with the District, the Court grants his motion to dismiss for lack of personal jurisdiction.

## D. Other Defendants

Defendants Seda Gengoru, Meral Agim, M. Onur Agim, Gamze Ozoguz, and Gumussuyu

---

(1st Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998).

**5.** PROGEN contends that OPI approached PROGEN first, not vice versa. *See* Öztemir Aff. ¶ 8. For the purposes of the motion to dismiss, however, all factual disputes must be resolved in favor of plaintiff. *See New York Zoological,* 894 F.2d at 456; *National Gypsum Co. v. Dalemark Indus., Inc.,* 773 F.Supp. 1476, 1479 (D.Kan. 1991).

Hali Sanayi ve Ticaret A.S. ("Gumussuyu") are identified in the amended complaint as individuals (or in the case of Gumussuyu, a company) having "an ownership interest in land located at Buyukdere Caddessi No. 171,-80640 Levent, Istanbul, Turkey." *See* Am. Compl. ¶¶ 8–12. Plaintiff has not otherwise explained the relevance of these parties or their connection to the District or the contract between OPI and PROGEN. With the exception of Gengoru, none of these defendants is mentioned in the amended complaint beyond their initial identification.[6] Accordingly, because plaintiff has not met its burden to establish a *prima facie* case of jurisdiction with respect to these defendants, the claims against them are dismissed.

### III. *Forum Non Conveniens*

 The Court must initially address the question of whether the Protocol and its choice-of-law and forum-selection clause apply to this dispute. In order to accomplish this, the Court turns to the text of the Protocol itself. Since both parties agree that the language of the choice-of-law and forum-selection clause is clear and governs any breach of the Protocol (absent plaintiff's success on its duress claim), the first question the Court addresses is whether the breach and other violations alleged are covered by the scope of the Protocol, as defendants assert, or instead by a second contract, as plaintiff asserts.

In interpreting the language of the Protocol, the Court must

adhere[ ] to the objective law of contracts, whereby the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered the contract, unless the written language is not susceptible of a clear and definite undertaking, or unless there is fraud, duress or mutual mistake.

*Kyriakopoulos v. George Washington Univ.*, 866 F.2d 438, 444 n. 1 (D.C.Cir.1989) (quoting

*Howard Univ. v. Best*, 484 A.2d 958, 967 (D.C.1984) (internal citations omitted)). The Court agrees with the parties that the language of the Protocol is clear. Therefore, the Court need not, and indeed may not, go beyond the text of the contract in its interpretation.

The relevant section of the Protocol titled "Intent, Subject and Scope" indicates that OPI was to

prepare and deliver a comprehensive Feasibility Report deemed necessary for the construction as planned within the existing preliminary project on the Site at Büyükdere Cassesi ... and shall do so without omitting anything and including every detail ... in such a manner as to enable Ex–Im Bank of the United States to provide funds [or guarantees] equaling at least 70% of the total amount necessary for the MetroCity project. OPI shall also realize its submission for the final confirmation of the authorized committee which provides the credit allocation by the authorized department of the above mentioned bank.

Protocol § 2. The section of the Protocol titled "Validity" goes on to specify that the parties agree that the Protocol is valid until the application is finalized, submitted to, and accepted by the bank. Protocol § 3.

Plaintiff contends that defendants breached the agreement when, *inter alia*, they failed to submit the application to the Export–Import Bank. Since this allegation falls under the scope of the Protocol as defined by its plain language (having taken place in the time after the Protocol was signed, but before the application was accepted by the bank), the Court determines that the subject matter of the dispute is covered by the Protocol and not by a separate agreement covering the supposed second phase of the project.

In an attempt to avoid this conclusion, plaintiff offers a document dated March 2, 1995, which it claims represents an agreement embodying the general terms of the second phase of the project. Plaintiff asserts

**6.** There is evidence that defendant Gengoru traveled to the District to visit the potential subcontractors for the MetroCity project and that she was present at the negotiations that took place at the Willard Hotel. These contacts alone, however, are not sufficient to establish personal jurisdiction, particularly in light of the fact that there is no evidence that she solicited the relationship between PROGEN and OPI or that she was, personally, a party to the contract at issue.

that it is this "agreement" that controls the conduct at issue in this case, and that, at the very least, this document indicates that the Protocol governed only one phase of a multi-phase agreement. This attempt to evade the application of the Protocol to the events at issue fails for two reasons. First, as noted above, the clear language of the Protocol conclusively demonstrates that the conduct at issue falls within its scope, and the Court generally may not look beyond the clear language of a contract. *Kyriakopoulos,* 866 F.2d at 444 n. 1. Second, even if the Court could look beyond the clear language of the contract to determine its meaning, it would find unpersuasive plaintiff's contention that the March 2nd document represents the second-phase contract which it asserts was contemplated by the Protocol.

 The Court first notes that the March 2nd document clearly states on its face that it is simply a record of the meeting between the parties and that the final agreement would be drawn up later and signed. Even if this document were somehow characterized as an "agreement to agree," such a document would not create a contract under District law. *See, e.g. Maloney v. E.I. Du Pont de Nemours & Co.,* 352 F.2d 936, 938 (D.C.Cir. 1965) (stating that the case at hand was "almost the classic example of a legally unenforceable agreement to agree"), *cert. denied,* 383 U.S. 948, 86 S.Ct. 1201, 16 L.Ed.2d 210 (1966). Accordingly, this document could not itself constitute the second-phase agreement which plaintiff contends exists and governs the conduct at issue.

Furthermore, even if the Court could look to parol evidence in interpreting the contract, the March 2nd document would not provide probative evidence of the intent of the parties at the time the Protocol was agreed upon. This is clearly the case because the document is dated March 2, 1996, while the Protocol was signed on December 14, 1995.

Finally, and most importantly, the Protocol itself explicitly addresses the possibility of future agreements or phases. The Protocol's language is, once again, clear:

During the waiting period for the confirmation of Ex-lm Bank for the credit application which follows PROGEN's confirmation of the work carried by OPI and its presentation to the bank, OPI and PROGEN shall start negotiation on signing an agreement to determine on the relationship for the remainder of the project which will gain validity after confirmation is given with all its provisions by the aforementioned bank.

Protocol § 5. At the time the Protocol was signed, the parties agreed that any future agreement between them would not take effect until after confirmation was received from the bank. Since the final application was never submitted to the bank, under the Protocol it cannot have been time for the agreement concerning the "remainder of the project" to begin. Plaintiff does not contest this clause or argue that this clause was inserted under duress, nor does it dispute that the Protocol, by its own terms, overrules and annuls any and all other previous agreements or protocols signed between the parties. *Id.* § 7. Accordingly, the Court rejects plaintiff's contention that the conduct at issue is not within the scope of the Protocol.

Plaintiff next claims that if the choice-of-law and forum-selection clause is otherwise valid and controlling, it was inserted under duress and is therefore not enforceable. *See Ozerol v. Howard University,* 545 A.2d 638, 643 (D.C.1988) (stating that a written contract is not controlling where "there is fraud, duress or mutual mistake") (internal citation omitted). "[D]uress is 'any wrongful threat of one person by words or other conduct that induces another to enter into a transaction under the influence of such fear as precludes him from exercising free will and judgment . . . .' [it] may be exercised by 'wrongful acts that compel a person to manifest apparent assent to a transaction without his volition or cause such fear as to preclude him from exercising free will and judgment in entering into a transaction.'" *Sind v. Pollin,* 356 A.2d 653, 656 (D.C.1976) (quoting the Restatement of Contracts §§ 492, 493 (1932)), *see also Ozerol,* 545 A.2d at 643 (D.C.1988). Plaintiff bears the burden of establishing duress. *Ozerol,* 545 A.2d at 643.

Plaintiff asserts that "[d]efendants required OPI to execute the [P]rotocol as drafted or face an unacceptable delay in receiving

payment due under the agreement," but the corresponding paragraphs of Sahir Erozan's (President and CEO of OPI) affidavits do not allege that defendants required or even pressured plaintiff to execute the Protocol in this manner. *See* Declaration of Sahir Erozan ¶ 9 (April 10, 1998) [hereinafter "Erozan Decl."]; Erozan Aff. ¶ 27; Pl.'s Mem. in Opp'n to Defs.' Mot. To Dismiss at 28. Erozan simply states his personal opinion that if plaintiff had contested the provision there would have been a delay in payment. Erozan Decl. ¶ 9; Erozan Aff. ¶ 28. He never claims to have made even the most perfunctory of objections to the choice-of-law and forum-selection provision. In their affidavits, neither Erozan nor Metin Somay (OPI's counsel) offers any evidence in support of OPI's claim of duress other than pointing out that the forum-selection provision was added to the final Protocol at the very end of the negotiations. Comparing these allegations with the criteria for duress discussed above, the Court concludes that, as a matter of law, plaintiff has failed to allege any set of facts which, even if true, would constitute duress.[7] Accordingly, the Court concludes that the choice-of-law and forum-selection clause is valid and enforceable.[8] *See also Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 593–95, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

 The Court next turns to the effect of the forum-selection clause on defen-

dants' motion for dismissal on *forum non conveniens* grounds. Ordinarily, a court evaluating a *forum non conveniens* motion must first determine whether there exists an adequate alternative forum and, if there is, the court then must weigh the relative conveniences to the parties against the presumption of the plaintiff's forum selection. *El–Fadl v. Central Bank of Jordan,* 75 F.3d 668, 676–677 (D.C.Cir.1996). The burden of proving that there is an adequate alternative forum rests on the defendant. *Id.*

 This analysis, however, changes when the parties have agreed to a forum-selection clause. In *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the Supreme Court concluded that when the parties have agreed to a forum-selection clause, "in light of present-day commercial realities and expanding international trade ... the forum clause should control absent a strong showing that it should be set aside." Moreover, the Supreme Court made it clear that it is "incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Id.* at 18, 92 S.Ct. 1907. Thus, the burden is on plaintiff to show that it would be so difficult to litigate this case in Turkey that it would in effect deprive plaintiff of its day in court.[9]

---

7. Plaintiff does not allege that defendants intentionally waited until the last minute to insert the provisions, that defendants had any reason to know that raising the issue would in fact cause delays in payment, that defendants acted in any way strategically, or that defendants even knew that plaintiff was in a difficult financial position.

8. Apparently in an attempt to state at least one claim not covered by the forum-selection clause, plaintiff in its Amended Complaint alleges "misrepresentation" by defendants when OPI and PROGEN were negotiating the so-called "second phase" of the MetroCity project. The Court notes, however, that the Protocol specifically covers the negotiations of future agreements between OPI and PROGEN for the remainder of the project. *See* Protocol § 5. Thus, the alleged misrepresentation in Count III of the Amended Complaint clearly falls within the forum-selection clause covering "[a]ny conflict arising between the Parties as a result of this Protocol." *Id.* § 6.

9. Although *Bremen* was an admiralty case, the vast majority of the circuits which have considered the applicability of *Bremen* in a diversity case have concluded that federal, not state, *forum non conveniens* law governs. *See, e.g., Haynsworth v. The Corporation,* 121 F.3d 956, 962 (5th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1513, 140 L.Ed.2d 666 (1998); *Rivendell Forest Prods., Ltd. v. Canadian Pacific Ltd.,* 2 F.3d 990, 991–92 (10th Cir.1993) (citing cases); *Royal Bed and Spring Co. v. Famossul Industria e Comercio de Moveis Ltda.,* 906 F.2d 45, 50 (1st Cir.1990); *see also Commerce Consultants Int'l, Inc. v. Vetrerie Riunite S.p.A.,* 867 F.2d 697, 699–700 (D.C.Cir.1989) (applying *Bremen* in a diversity case). These decisions are based on the observation that " '[t]he *forum non conveniens* doctrine is a rule of venue, not a rule of decision' and, therefore, the [*Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ] doctrine does not require the application of state *forum non conveniens* rules." *Rivendell,* 2 F.3d at 992 (quoting *Sibaja v. Dow Chem. Co.,* 757

*Id.; see also Carnival Cruise Lines,* 499 U.S. at 591–92, 111 S.Ct. 1522 (explaining the heavy burden of proof which commercial entities involved in an international business transaction must satisfy in order to set aside a valid forum-selection clause even when that clause designates a remote forum for the resolution of conflicts); *Commerce Consultants Int'l, Inc. v. Vetrerie Riunite S.p.A.,* 867 F.2d 697, 699 (D.C.Cir.1989) (holding that a forum-selection clause should be enforced even in light of serious questions concerning the discovery process in Italian courts).

 Plaintiff has not met this burden. It essentially argues that Turkey is an inappropriate forum because of its physical inconvenience and its requirement that foreign plaintiffs post bonds totaling ten percent of the amount at issue in lawsuits. Erozan Decl. ¶¶ 50–51; Erozan Aff. ¶ 48. Plaintiff contends that these obstacles, in particular the bond requirement, are "nearly insurmountable." However, the Court notes that these obstacles—although undeniably significant—were or should have been readily apparent to plaintiff, a sophisticated commercial entity, at the time it agreed to the choice-of-law and forum-selection clause. *See Bremen,* 407 U.S. at 17–18, 92 S.Ct. 1907 (noting that when the "obstacle" was clearly foreseeable at the time of contracting, it is less persuasive). Apparently, at that point, plaintiff considered these obstacles to be manageable or it would not have entered into the contract. Plaintiff has not alleged that the bond requirement is a new legal hurdle which could not have been considered at the time of contracting or that new factual circumstances, which could not have been reasonably foreseen at the time of contracting, have arisen. *See also Mercier v. Sheraton Int'l, Inc.,* 981 F.2d 1345, 1353 (1st Cir.1992) (refusing to hold that Turkey's bond requirement makes it an inadequate forum), *cert.*

F.2d 1215, 1219 (11th Cir.), *cert. denied,* 474 U.S. 948, 106 S.Ct. 347, 88 L.Ed.2d 294 (1985)); *see also Royal Bed,* 906 F.2d at 50. The Court thus cites *Bremen* and other federal cases as binding authority.

10. Defendants also submitted the affidavit of Muvaffak Batur, a Turkish lawyer, who explained the ease of proceeding with a lawsuit in Turkey

*denied* 508 U.S. 912, 113 S.Ct. 2346, 124 L.Ed.2d 255 (1993). Plaintiff cites no other evidence indicating that it would be unable to bring this case in Turkey.[10] The Court concludes that plaintiff has not shown that it would be effectively denied access to justice in Turkey, and has therefore not met its burden to avoid the forum-selection clause.

## CONCLUSION

For the foregoing reasons, the Court concludes that it has jurisdiction only over defendants PROGEN Musavirlik ve Yonetim Hizmetleri, Ltd. Sikerti, and Necmettin Öztemir. Moreover, the Court concludes that with respect to those defendants over which it has jurisdiction, the instant action should be dismissed on *forum non conveniens* grounds. Accordingly, the Court grants defendants' motion to dismiss on the ground of *forum non conveniens.* An appropriate Order accompanies this Opinion.

and noted that, as in the United States, a lower court decision may be appealed. Batur Aff. ¶ 5. Moreover, Batur states that the initial deposit would be refundable to OPI if the lawsuit is dismissed; if OPI were to win the deposited amount would be collected from PROGEN to be paid back to OPI. *Id.* ¶ 4.